# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>WHITE AND GOLD APPLE iPHONE 8 (IMEI: 356707080789076), CURRENTLY LOCATED AT 200 CHESTNUT STREET, PHILADELPHIA PA | )<br>)<br>) Case No. 24-MJ-1053<br>)<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the __Eastern__ District of __Pennsylvania__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(o) | Transfer of a machinegun |
| 18 U.S.C. 924(c) | Possession of a firearm in furtherance of drug trafficking |
| 21 U.S.C. 841(a)(1) | Distribution of a controlled substance |

The application is based on these facts:
See attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ SA Eric Gavin
*Applicant's signature*

Eric Gavin, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: _____

Lynne A. Sitarski
Digitally signed by Lynne A. Sitarski
Date: 2024.06.28 14:44:09 -04'00'
*Judge's signature*

City and state: Philadelphia, PA

Hon. Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A WHITE AND GOLD APPLE iPHONE 8 (IMEI: 356707080789076) RECOVERED BY ATF AND IS CURRENTLY LOCATED AT 200 CHESTNUT STREET, PHILADELPHIA, PA | Case No. 24-MJ-1053 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Special Agent Eric Gavin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am employed as a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") with the United States Department of Justice and have been since October 2019. I am a graduate of the Federal Law Enforcement Training Center's criminal investigator training program as well as the ATF National Academy. I have received investigative training in overt and/or covert methods to investigate violent criminal acts by individuals, organizations and/or gangs. These violent acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession, or use of explosives and/or destructive devices. As a result of my training and experience, the affiant is empowered to investigate violations of federal law. As a case agent, I have experience in the fundamentals of social media analysis and mobile communications, electronic and cellular data analysis.

2. Based on the facts set forth in this affidavit, there is probable cause to believe that Jalein YOUNG has committed violations of 18 U.S.C. §§ 922(o) (Transfer of a machinegun), 924(c) (Possession of a firearm in furtherance of a crime of drug trafficking), and 21 U.S.C. § 841(a)(1) (Distribution of a controlled substance). I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the forensic image of a white and gold Apple iPhone 8 (IMEI: 356707080789076) ("**SUBJECT TELEPHONE**"), which is described more fully below and in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

3. This affidavit is based upon my personal knowledge, my training and experience, as well as information related to me directly or through reports of other ATF Special Agents and Task Force Officers, and other law enforcement officers in the course of their participation in this investigation.

4. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included all information known by me or other agents concerning this investigation. I have set forth only those facts I believe are essential to establish the probable cause for the search warrant. This affidavit does not exhaust my knowledge or that of other agents and investigators of the facts and circumstances surrounding this investigation.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5. The property to be searched is a white and gold Apple iPhone (IMEI: 356707080789076), hereinafter the "**SUBJECT TELEPHONE**," recovered during the execution of an arrest warrant by ATF Special Agents. The **SUBJECT TELEPHONE** is

currently located at 200 Chestnut Street Suite 504, Philadelphia, PA 19106, the ATF Office located within the US Custom House.

## PROBABLE CAUSE

6. The United States government, including The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Drug Enforcement Administration ("DEA"), and the Charlotte-Mecklenburg Police Department ("CMPD"), are currently investigating the drug trafficking and firearms trafficking activities of Jalien Renault YOUNG. YOUNG was residing in the Western District of North Carolina. In January 2024, investigators met with a DEA Confidential Reliable Informant [1] ("CRI") that provided information in regard to YOUNG's criminal activity.

### *CONTROLLED PURCHASE JANUARY 31, 2024*

7. On January 31, 2024, DEA Investigators utilized a CMPD Undercover ("UC") to conduct a controlled purchase of 500 suspected fentanyl pills from YOUNG in exchange for $1,000 US currency. The controlled purchase occurred at 8600 University City Blvd, Charlotte, NC, 28262, in the Western District of North Carolina. During the controlled purchase, CMPD UC and YOUNG exchanged phone numbers. YOUNG gave the CMPD UC the phone number of 980-267-8475 to discuss future narcotics transactions.

8. On May 17, 2024, the Charlotte-Mecklenburg Police Department Crime Laboratory tested two items from the clear plastic bags containing tablets obtained during the

---

[1] The DEA CRI is a federal defendant with no prior convictions. The CRI has been working with investigators for approximately three years and has provided information that has helped investigators conduct investigations into multiple narcotics trafficking and firearms trafficking. Investigators believe that the CRI's information is reliable, as investigators have been able to corroborate the CD's information through a variety of independent means and through multiple investigations.

January 31, 2024, controlled purchase. Item 1A, containing 244 round yellow tablets marked with "T 189" and item 1B containing 247 round blue tablets marked with "A 215", were analyzed using pharmaceutical imprint and Gas Chromatography-Mass Spectrometry ("GC-MS"). The test showed that the yellow tablets (Item 1A) contained a mixture of fentanyl and fluoro-fentanyl, while the blue tablets (Item 1B) contained fentanyl for a total net weight of 42.51 grams of fentanyl and fluoro-fentanyl and 23.90 grams of fentanyl.

### CONTROLLED PURCHASE February 5, 2024

9.  On February 5, 2024, ATF investigators utilized an ATF UC to conduct a controlled purchase of a Glock, 19, 9mm, Serial Number BTWY984, that had been converted to a machinegun, and 500 suspected fentanyl pills from YOUNG for $1,960 US currency. The controlled purchase occurred at 8117 Old Concord Road, Charlotte, NC, located in the Western District of North Carolina. Before the controlled purchase, ATF UC and YOUNG were in contact with each other through text messaging and phone calls. YOUNG utilized the phone number 980-267-8475 for these communications. After the controlled purchase, YOUNG text messaged ATF UC that he could get more "switches." The text messages and phone calls with YOUNG were recorded.

10. On May 17, 2024, the Charlotte-Mecklenburg Police Department Crime Laboratory tested one item from the two clear plastic bags containing tablets obtained during the February 5, 2024, controlled purchase. Item 1A, containing 279 round yellow tablets marked with "T 189" and Item 1B containing 244 round blue tablets marked with "A 215", were analyzed using pharmaceutical imprint and Gas Chromatography-Mass Spectrometry ("GC-MS"). The test showed that the yellow tablets (Item 1A) contained a mixture of fentanyl and

4

fluoro-fentanyl, while the blue tablets (Item 1B) contained fentanyl for a total net weight of 49.10 grams of fentanyl and fluoro-fentanyl and 30.42 grams of fentanyl.

### *CONTROLLED PURCHASE February 16, 2024*

11.     On February 16, 2024, DEA Investigators utilized a CMPD Undercover ("UC") to conduct a controlled purchase of 2,000 suspected fentanyl pills from YOUNG in exchange for $4,000 US currency. The controlled purchase occurred at 8300 University City Blvd, Charlotte, NC, 28262, in the Western District of North Carolina. Prior to the controlled purchase, YOUNG and the CMPD UC engaged in discussions about the sale of narcotics, as well as exchanged text messages and phone calls to coordinate the location and details of the controlled purchase. YOUNG utilized the phone number 980-267-8475 to communicate with CMPD UC. The text messages and phone calls with YOUNG were recorded.

12.     On June 10, 2024, the Charlotte-Mecklenburg Police Department Crime Laboratory tested three items containing tablets obtained from the controlled purchase on February 16, 2024. Item 1A, containing 475 round dark blue tablets marked with "A215", Item 1B, containing 922 round light blue tablets marked with "A 215", and Item 1C, containing 504 round yellow tablets marked with "T 189", were analyzed using pharmaceutical imprint and Gas Chromatography-Mass Spectrometry ("GC-MS"). The test showed that the dark blue (Item 1A) and light blue tablets (Item 1B) contained fentanyl, while the yellow tablets (Item 1C) contained heroin for a total net weight of 161.2 grams of fentanyl and 86.73 grams of heroin.

### *CONTROLLED PURCHASE March 1, 2024*

13.     On March 1, 2024, ATF investigators utilized an ATF UC to conduct a controlled purchase of a Palmetto State Armory, Rifle, Model PA-15, Caliber MULTI, Serial Number LW350230, and 250 suspected fentanyl pills from YOUNG for $1300 US currency. The

5

controlled purchase occurred at 8117 Old Concord Road, Charlotte, NC, located in the Western District of North Carolina. Prior to the controlled purchase, YOUNG and the ATF UC engaged in discussions about the sale of narcotics and firearms through text messages and phone calls to coordinate the location and details of the controlled purchase. YOUNG utilized the phone number 980-267-8475 to communicate with ATF UC. The text messages and phone calls with YOUNG were recorded.

14. On May 9, 2024, the Charlotte-Mecklenburg Police Department Crime Laboratory tested one item in clear plastic bag containing tablets obtained from the March 1, 2024, controlled purchase. Item 4, containing 255 round blue tablets marked with "A 215", was analyzed using pharmaceutical imprint and Gas Chromatography-Mass Spectrometry ("GC-MS"). The test showed that the blue tablets (Item 4) contained fentanyl with a total net weight of 33.15 grams.

*SERACH WARRANT and ARREST March 13, 2024*

15. On March 13, 2024, DEA Investigators were conducting surveillance on YOUNG outside of 3302 Newell Village Drive, Charlotte, NC located in the Western District of North Carolina. During the surveillance, investigators observed YOUNG leave the residence in a black Mercedes Benz A220 (NC Tag JBS-1603). After YOUNG departed in the vehicle, CMPD officers observed YOUNG traveling on Old Concord Road to meet a CMPD UC to conduct a drug transaction for 5,000 suspected fentanyl pills. CMPD officers attempted to initiate a traffic stop, but YOUNG immediately drove back to his residence and drove into the garage to attempt to enter the residence prior to officers conducting the traffic stop. Prior to the controlled purchase, YOUNG and the CMPD UC engaged in discussions about the sale of narcotics through text messages and phone calls to coordinate the location and details of the controlled

purchase. YOUNG utilized the phone number 980-267-8475 to communicate with ATF UC. The text messages and phone calls with YOUNG were recorded.

16. On March 13, 2024, DEA Task Force Officer ("TFO") Rolando Ortiz obtained a search warrant for the residence of YOUNG based on observations from a traffic stop conducted by DEA TFO Chris Newman. The search warrant was signed by Mecklenburg County Magistrate R. Gardner on the same day. At 4:58 p.m., DEA TFO Rolando Ortiz arrived at the scene with the search warrant and read it to Tayana Johnson, while DEA TFO Bristol witnessed the event. A copy of the search warrant was left inside the residence. At approximately 5:00 p.m., DEA, ATF, and CMPD officers executed the search warrant at 3302 Newell Village Drive, Charlotte, NC, the residence of YOUNG and Tayana Johnson. The seized items included 556.4 grams of suspected fentanyl found in the front passenger seat of the Mercedes-Benz, 409.4 grams of suspected fentanyl pills found inside a teal bag on a couch in the garage, a small amount of suspected marijuana, and YOUNG's cell phone found on his person. YOUNG was charged with violations of the North Carolina Controlled Substances Act- trafficking opium or heroin.

17. On May 28, 2024, the Charlotte-Mecklenburg Police Department Crime Laboratory tested two items for suspected fentanyl, recovered during the search of YOUNG's home. Item 1, containing 5,090 round blue tablets marked with "A 215", Item 2A, containing 1,532 round dark blue tablets marked with "A 215", and Item 2B, containing 1,582 round light blue tablets marked with "A 215", were analyzed using pharmaceutical imprint and Gas Chromatography-Mass Spectrometry ("GC-MS"). The test showed that items 1, 2A, 2B contained fentanyl with a total net weight of 863.77 grams.

***Recorded Phone Call March 29, 2024***

18. On March 29, 2024, YOUNG contacted CMPD UC from a new cell phone number and informed UC that he had been arrested while on his way to the prearranged deal location on March 13, 2024. YOUNG used the phone number 213-660-9126. YOUNG mentioned that he had to visit "tmobile.com" to retrieve UC's phone number because he no longer had his cell phone. CMPD UC and YOUNG discussed the future sale of narcotics.

***GRAND JURY May 21, 2024***

19. On May 21, 2024, a Grand Jury in the Western District of North Carolina issued an arrest warrant for YOUNG for 18 U.S.C. §§ 922(o) (Transfer of a machinegun), 924(c) (Possession of a firearm in furtherance of a crime of drug trafficking), and 21 U.S.C. § 841(a)(1) (Distribution of a controlled substance).

***ARREST June 16, 2024***

20. On June 15, 2024, ATF Philadelphia was notified by the ATF Joint Support Operations Center ("JSOC") duty agent that Customs and Border Protection ("CBP") was requesting information regarding an arrest warrant. Contact was made with CBP Officers who had identified that Jalien YOUNG, the subject of an ATF arrest warrant, had a one-way ticket flying out of Philadelphia International Airport on June 16, 2024, at 8:30 a.m. to Punta Cana, Dominican Republic. ATF Philadelphia Investigators notified the case agent in Charlotte, NC and confirmed that the warrant was still active.

21. On June 16, 2024, CBP Officers detained YOUNG prior to boarding his flight. Upon searching YOUNG's luggage, CBP Officers discovered an unknown amount of suspected marijuana which was taken into custody by Tinicum Township Police. YOUNG's white and gold

iPhone 8 (IMEI: 356707080789076), the **SUBJECT TELEPHONE,** was found on his person, powered off, and taken into custody by ATF Philadelphia Investigators.

*Probable Cause to Search the SUBJECT TELEPHONE*

22. Based on my training and experience, together with other investigators participating in this investigation, I know that individuals engaging in the sale of narcotics and firearms commonly use cellular devices to plan and conduct sales. Individuals will use cellular devices to communicate with coconspirators and buyers to facilitate the distribution and sale of narcotics. Additionally, individuals engaged in such offenses often utilize GPS and map applications during and after the commission of such offenses. For these reasons, and others, individuals often bring their cellular devices during and after the commission of such offenses. Therefore, the information requested herein is likely to constitute evidence of the crimes under investigation.

23. Based on my training, experience, and knowledge of this investigation YOUNG has used cellular devices to arrange illegal firearm and drug trafficking transactions.

24. An examination of the **SUBJECT TELEPHONE** could also document communications in different message formats (e.g. text, phone, instant message application) between the various actors involved in these incidents as well as others.

25. In my training and experience, I know it is also common for individuals to take photos or videos of themselves or others with a cellular phone like the **SUBJECT TELEPHONE** while possessing or using firearms whether or not they share those photos/videos with others privately in the form of a text/picture message or share them publicly on social media platforms. I also know it is common for individuals to take individual and group photographs with their cellular phone whether or not they share them privately or publicly. The **SUBJECT**

9

**TELEPHONE** could contain photos or video depicting Jalien YOUNG handling the firearm/machinegun conversion device sold to the ATF UC or the narcotics sold to the CMPD UC.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

      store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. *GPS*:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e. *PDA*:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

27. Based on my training and experience, along with that of other investigators participating in this investigation, I know that the **SUBJECT TELEPHONE** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41I(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/  **SA Eric Gavin**
Eric Gavin
Special Agent
Alcohol, Tobacco, Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on the __28th__ day of _____June_____, 2024:

Lynne A. Sitarski
Digitally signed by Lynne A. Sitarski
Date: 2024.06.28 14:46:24 -04'00'

Honorable Lynne A. Sitarski
United States Magistrate Judge

13

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

This warrant authorizes the search of a white and gold Apple iPhone with associated IMEI: 356707080789076, the **SUBJECT TELEPHONE**, recovered by members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives during the execution of an arrest warrant and currently stored at 200 Chestnut Street Suite 504, Philadelphia, PA 19106 for the purpose of identifying and seizing the electronically stored information described in Attachment B.

## ATTACHMENT B
## ITEMS TO BE SEIZED

1. All records on the forensic image of the **SUBJECT TELEPHONE** that relate to violations of 18 U.S.C. § 922(o) (Transfer of a machinegun), 18 U.S.C. § 924(c) (Possession of a firearm in furtherance of a crime of drug trafficking), and 21 U.S.C. § 841(a)(1) (Distribution of a controlled substance) from January 31, 2024 – present, including:

   a. Documents in electronic form, including correspondence, records, opened or unopened emails, text messages, voicemail messages, call logs, chat logs, internet history, social media application data, GPS data and map history, mobile payment application data, address book and calendar entries, photographs, and videos, relating to the violation of the statutes above.

   b. Stored information including contact information, photographs, videos, voice messages, text messages, emails, browser history, applications, and call logs, relating to any co-conspirators, including names, addresses, telephone numbers, or other identifying information of any persons who may be involved in the violation of the statutes above.

   c. Documents and records of any activity taken, or communication made, in furtherance of the possession or use of a firearm or ammunition, or to hide the evidence thereof after the possession or use of a firearm or ammunition.

   d. Evidence of user attribution showing who used or owned the cellular device at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   e. Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, opened, saved, or deleted.

   f. Evidence tending to show the identity of the person using the device at the time any actions relating to the above offenses were taken.

   g. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including, but not limited to the following:

      i. Any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

15

      ii. All data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system, including any and all electronic data which can be collected, analyzed, created, displayed, converted, stored, concealed, or transmitted, or similar computer impulses or data.

      iii. Stored electronic information and communications, including but not limited to, telephone or address directory entries consisting of names, addresses and telephone numbers; logs of telephone numbers dialed, telephone numbers of missed calls, and telephone numbers of incoming calls; schedule entries; stored memoranda; stored text messages; stored photographs; store audio; and stored video.

All of which constitute evidence of violations of 18 U.S.C. § 922(o) (Transfer of a machinegun), 18 U.S.C. § 924(c) (Possession of a firearm in furtherance of a crime of drug trafficking), and 21 U.S.C. § 841(a)(1) (Distribution of a controlled substance).

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* ) <br> *or identify the person by name and address)* ) <br> ) <br> A WHITE AND GOLD APPLE iPHONE 8 (IMEI: ) <br> 356707080789076) RECOVERED BY ATF AND IS CURRENTLY ) <br> LOCATED AT 200 CHESTNUT STREET, PHILADELPHIA, PA ) | Case No.   24-mj-1053 |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the   **Eastern**   District of   **Pennsylvania**
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   **July 12, 2024**   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the duty magistrate.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

*Lynne A. Sitarski* (Digitally signed by Lynne A. Sitarski, Date: 2024.06.28 14:45:07 -04'00')

*Judge's signature*

City and state:   Philadelphia, Pennsylvania          Lynne A. Sitarski, US Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return |||
|---|---|---|
| Case No.:<br>  24-mj-1053 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

| Certification |
|---|
| |
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*